IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID BRADEN,

    Petitioner,

v.

MARGARET BAGLEY, Warden,

    Respondent.

Case No. 2:04-CV-842
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon Petitioner's motion for an evidentiary hearing (Doc. # 50), Respondent's memorandum in opposition (Doc. # 51), and Petitioner's reply in support (Doc. # 52).

## I. Introduction

Petitioner requests an evidentiary hearing on two issues concerning his competency to stand trial. Petitioner seeks a hearing on his first ground for relief, in which he alleges that he was incompetent to stand trial in violation of his right to due process, and on his fourth ground for relief, where he claims that his trial attorneys were ineffective for failing to ensure that he was not tried while incompetent. Specifically, Petitioner argues that trial counsel breached their duty to inform the trial court of Petitioner's further mental deterioration, as evidenced by a second note that he had passed to trial counsel, and to request a competency hearing. In support of these claims, Petitioner seeks an evidentiary hearing to elicit the testimony of Dr. Douglas Mossman and mitigation investigator James Crates.

## II. Standards

Whether a federal court is permitted to conduct an evidentiary hearing in habeas corpus is governed by 28 U.S.C. § 2254(e)(2). That section provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). This statutory provision places substantial restrictions on the authority of district courts to conduct an evidentiary hearing. However, "[b]y the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.' If the prisoner failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of § 2254(e)(2)." *Williams v. Taylor*, 529 U.S. 420, 430 (2000).

Thus, when a petitioner seeks to develop facts in an evidentiary hearing that were not considered by the state courts, and to have his constitutional claims considered in light of those new facts, the petitioner must demonstrate that he was not at fault for the failure to develop the facts underlying his claims. Petitioner is at fault for the failure to develop the facts if he failed,

2

based on the evidence that was available to him, to exercise due diligence in developing and presenting that evidence. *Williams, supra*, 529 U.S. at 432. Generally, Petitioner exercises due diligence if he requests an evidentiary hearing in the state courts in accordance with state law. *Williams, supra*, 529 U.S. at 437; *see also Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (holding that the petitioner satisfied diligence requirement by raising his claim in appropriate forum and requesting a hearing that was never afforded by the state courts); *Jackson v. Anderson*, 141 F. Supp. 2d 811, 828 (N.D. Ohio 2001) ("The Petitioner sought an evidentiary hearing in state court, which was denied, and thereby satisfied the diligence requirement of §2254(e)(2)").

Of course, even if the Court determines that §2254(e)(2) does not preclude a hearing, then the Court must determine in its discretion whether an evidentiary hearing is warranted. *Campbell v. Vaughn*, 209 F.3d 280, 287 (3rd Cir. 2000). The fact that Petitioner satisfies the threshold requirement in §2254(e)(2) "'does not mean he *is* entitled to an evidentiary hearing–only that he *may* be.'" *Jackson, supra,* 141 F. Supp. 2d at 828 (quoting *McDonald v. Johnson*, 139 F.3d 1056, 1059-1060 (5th Cir. 1998)) (emphasis in original). Evidentiary hearings in federal habeas corpus are intended to ensure that the petitioner has a full and fair opportunity to develop the factual bases of his constitutional claims. But evidentiary hearings are not granted as a matter of course in federal habeas corpus. In determining whether an evidentiary hearing should be held, the relevant inquiry is whether a hearing would be meaningful in enabling the petitioner to advance his claim. *Campbell, supra,* 209 F.3d at 287.

In making the determination of whether an evidentiary hearing should be held, or even can be held under §2254(e)(2), it bears reminding that, to the extent that any factual findings *were* made by the state courts, federal habeas corpus courts must presume that those findings are

3

correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1)[1]; *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1999); *Mason v. Mitchell*, 95 F. Supp. 2d 744, 773 (N.D. Ohio 2000). Further, factual findings issued without the benefit of a "live" hearing are no less deserving of the presumption of correctness mandated in §2254(e)(1) than those issued with the benefit of a "live" hearing; §2254(e)(1) contains no such prerequisite for the presumption of correctness to attach to factual findings. *See Mendiola v. Schoming*, 224 F.3d 589, 592-93 (7th Cir. 2000) (rejecting argument that only trial judges can make "factual findings" and then only after live hearings dedicated to the disputed facts).

To the extent that material factual issues were not resolved by the state courts, in spite of Petitioner's diligence in attempting to develop those facts by submitting relevant evidence outside the record, or where Petitioner seeks to develop evidence to rebut a state court's factual finding, an evidentiary hearing nonetheless may not be necessary if the record is sufficiently developed to enable the Court to make any necessary factual findings. An evidentiary hearing may not be necessary where the district court expands the record to include documentary evidence. *Cardwell v. Greene*, 152 F.3d 331, 337-8 (4th Cir. 1998), *overruled on other grounds, Bell v. Jarvis*, 236 F.3d 149, 160 (4th Cir. 2000).

> [W]e conclude that the district court properly declined to conduct an evidentiary hearing. *** Despite repeated assertions that analysis of his ineffective assistance

---

[1] Section 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

4

claim requires an evidentiary hearing, Cardwell has failed to forecast any evidence
beyond that already contained in the record, or otherwise to explain how his claim
would be advanced by an evidentiary hearing. The district court has already
expanded the record to permit the inclusion of the reports completed by Drs. Hart
and Hagan. We have long held that the need for an evidentiary hearing may be
obviated by such expansion of the record.

*Cardwell*, 152 F.3d at 338; *see also McDonald v. Johnson, supra*, 139 F.3d at 1060 (holding that evidentiary hearing was not necessary since district court had considered affidavits of the petitioner and the petitioner's trial counsel regarding plea).

With these principles in mind, the Court will consider each of Petitioner's evidentiary hearing requests to determine whether a hearing is barred and, if not, whether a hearing is warranted.

### III. Petitioner's Claims

#### A. **First Ground for Relief**: Petitioner was deprived of due process of law when he was tried while incompetent.

As the Court first set forth in its March 30, 2007, *Opinion and Order* permitting Petitioner to conduct limited discovery, Petitioner argues in his first ground for relief that he was deprived of due process because he was tried while incompetent. (Petition, Doc.# 10, at 7-17.) According to the petition, although Petitioner appeared fine to defense trial counsel Thomas Beal during their initial visits between September and December of 1998, Petitioner's mental condition appeared to Mr. Beal to deteriorate after that. The petition states that Mr. Beal made the trial court aware of his concerns about Petitioner's mental health, prompting the trial court to expand the role of Dr. Kathleen Burch from just examining Petitioner in preparation for the mitigation phase of his trial to additionally examining Petitioner for the purpose of assessing his competency to stand trial. Following four evaluations, the petition continues, Dr. Burch found

5

Petitioner competent to stand trial because, although Dr. Burch harbored concerns about petitioner's delusional beliefs that he was a prophet of God, that he would be spared from his capital case by God, and that certain weather occurrences and other current events were related to his case, Dr. Burch was never made aware or otherwise had reason to believe that Petitioner was not communicating and cooperating with his defense attorneys. According to the petition, Mr. Beal's personal trial notes, which were not revealed until Petitioner's postconviction proceedings, demonstrated that Petitioner in fact had not been able to cooperate with or otherwise assist his trial attorneys during the case.

Petitioner filed a postconviction action in the state trial court alleging, among other things, that he had been tried while incompetent. In support of that claim, he submitted an affidavit by Dr. Douglas Mossman, who had evaluated Petitioner some eight months after Petitioner's trial and concluded that Petitioner's "mental illness substantially compromised his understanding of the proceedings against him and his ability to consult with his lawyers in preparing his defense." (App. Vol. 4, at 96.) Also submitted were two notes that Petitioner had passed to defense counsel, one during a pretrial hearing and the other during the trial phase, essentially stating that, according to God, Petitioner was to be given a full pardon, new identity, travel credentials, and money. (App. Vol. 4, at 115-117.)

After reviewing Petitioner's postconviction action and supporting exhibits, the trial court issued an order setting the matter for an evidentiary hearing "on the issue of Petitioner's mental status at the time of the trial, as well as at the time these acts occurred." (App. Vol. 5, at 65.) The trial court stated in its order that it "expect[ed] to hear testimony, at a minimum, from the following individuals: Dr. Douglas Mossman; Dr. Kathleen J. Burch; Thomas D. Beal, Esq.; P.

6

Lon Allen, Esq.; and James Crates." (*Id.*) The trial court conducted the evidentiary hearing on April 19, 2002. Petitioner called two witnesses, defense attorney Thomas Beal and defense psychologist Dr. Kathleen Burch, and presented as exhibits notes that Mr. Beal took during his jail visits with Petitioner, the two notes that Petitioner had passed to defense counsel, Dr. Burch's notes from her sessions with Petitioner, and an affidavit by Dr. Burch regarding her opinion as to Petitioner's mental state at the time of the offense.

Following the testimony of Mr. Beal and Dr. Burch, Petitioner was prepared to call Dr. Mossman as a witness. Petitioner did not call Dr. Mossman, after the trial court stated on the record that it had thoroughly considered Dr. Mossman's affidavit, that it was not sure what Dr. Mossman could add, and that it was not sure that it wanted to hear from him. (Evid. Hrg. Tr., at 107-108.) Petitioner stated in his motion for discovery that he had also subpoenaed and was prepared to call defense co-counsel P. Lon Allen and mitigation specialist Jim Crates (Doc. # 32, at 8); but neither testified and the transcript of the evidentiary hearing contains no indication of why Petitioner did not call them.

The parties filed their post-hearing briefs on May 10, 2002. On August 2, 2002, the trial court issued a decision and entry denying Petitioner's postconviction action. (App. Vol. 5, at 186.) Regarding Petitioner's claim that he was tried while incompetent, the trial court declined to consider the affidavit by Douglas Mossman, M.D., citing primarily the fact that Dr. Mossman's evaluation of Petitioner's competency to stand trial had taken place some eight months after the trial (App. Vol. 5, at 200). The trial court also determined that Dr. Burch's "changed opinion" of Petitioner's incompetence was not credible (App. Vol. 5, at 205) and concluded that Petitioner's claim, accordingly, could have been raised on direct appeal and was

7

therefore barred under Ohio's doctrine of *res judicata* (App. Vol. 5, at 205-206). The Ohio Court of Appeals for the Tenth Appellate District affirmed the trial court's rationale for applying the *res judicata* doctrine against Petitioner's competency claim, and added that, "even if the trial court would have accepted both Drs. Burch and Mossman's opinions, we agree that res judicata could be applied under the present circumstances." (App. Vol. 7, at 123.)

**B. Fourth Ground for Relief: Petitioner's counsel were constitutionally ineffective for failing to protect Petitioner's right to be tried while competent, in violation of Defendant's rights under the Sixth, Eighth and Fourteenth Amendments.**

As the Court also set forth in its March 30, 2007, *Opinion and Order* allowing Petitioner to conduct certain discovery, Petitioner argues in his fourth ground for relief that his defense attorneys were constitutionally ineffective for failing to protection petitioner's right to be tried while competent. Specifically, Petitioner argues that his trial attorneys breached their duty both by not informing the trial court about the second note that Petitioner had passed to them during his trial and by not requesting a competency hearing at trial. (Doc. # 10, at 29-32.)

## IV. Discussion

Petitioner argues that §2254(e)(2) does not preclude this Court from conducting a hearing on this claim because he was diligent in attempting to develop this evidence in the state courts. Specifically, Petitioner argues that although he had subpoenaed and was prepared to call the five witnesses that the trial court had said it expected to hear from–trial attorneys P. Lon Allen and Thomas D. Beal, mitigation specialist James Crates, defense counsel's mitigation/competency expert Dr. Kathleen Burch, and Dr. Douglas Mossman–"[i]t was clear at the evidentiary hearing that the trial court was not going to hear any testimony after Attorney Beal and Dr. Burch

testified." (Doc. # 50, at 5.)

Petitioner goes on to argue in his reply that his failure to call Dr. Mossman during the postconviction evidentiary hearing was a result not of a "choice" on Petitioner's part, but of the trial court expressing its displeasure that Dr. Burch had changed her opinion of Petitioner's competency to stand trial and indicating thereafter that it was not willing to hear from Petitioner's additional witnesses. (Doc. # 52, at 2.) Petitioner also suggests that the "bare-bones outline of the opinion [that] Dr. Mossman would have rendered" was offered not as logical choice to omit Dr. Mossman's actual testimony, but as a last resort after the trial court stated "that it did not want to hear from Dr. Mossman." (*Id.* at 3.) Petitioner insists that the decision not to call Dr. Mossman was made not by Petitioner, but by the trial court. (*Id.* at 4.) Petitioner points out that even the state court of appeals reviewing the denial of Petitioner's postconviction action stated that the trial court had refused to allow Dr. Mossman to testify. (*Id.* at 4 (quoting App. Vol. 8, at 67).) In sum, Petitioner argues that "his efforts to adequately develop the factual basis of his claim of incompetence were thwarted." (*Id.* at 5 (internal quotation marks omitted).)

Respondent argues that essentially the same facts offered by Petitioner establish that Petitioner did not exercise due diligence in attempting to develop in the state courts the facts that Petitioner seeks to develop in habeas corpus. Respondent objects to Petitioner's request for an evidentiary hearing on the grounds that the state trial court already conducted an evidentiary hearing on Petitioner's claims and that Petitioner failed during that hearing in state court to exercise due diligence when he failed to call Dr. Mossman. (Doc. # 51, at 7.) Respondent goes on to set forth in detail the meetings that Petitioner had with Dr. Burch prior to and during the trial; the contacts that trial counsel had with Petitioner, Dr. Burch, mitigation investigator James

9

Crates, and certain members of Petitioner's family; certain aspects of Petitioner's behavior prior to and during trial; and the proceedings that occurred in connection with Petitioner's postconviction action in the state courts–all involving the issue of Petitioner's competency to stand trial. (*Id.* at 7-15.) Where Petitioner argues that the actions of the trial court thwarted Petitioner's ability to fully develop the facts establishing his incompetency, Respondent argues that Petitioner was to blame for the failure to present Dr. Mossman's testimony. Specifically, Respondent argues that the record refutes any assertion that the trial court blocked Dr. Mossman's testimony because of improper bias against Dr. Mossman, that Petitioner did not wait for an official ruling from the trial court barring Dr. Mossman's testimony before deciding not to call Dr. Mossman and to offer instead a brief synopsis of what Dr. Mossman would testify to, and that Petitioner had an opportunity to call Dr. Mossman but decided not to. (*Id.* at 15-18.)

The first issue before the Court is whether Petitioner failed to exercise due diligence to develop in the state courts the facts that he seeks to develop in habeas corpus. Relying on the same interpretation of §2254(e)(2) and the same exchange that took place during Petitioner's state court postconviction evidentiary hearing between the trial court and Petitioner's postconviction counsel, the parties take opposite positions on whether that exchange establishes that Petitioner failed to exercise due diligence.

The exchange, in relevant part, went as follows. After the postconviction testimony of trial counsel Thomas Beal and defense counsel's mitigation/competency expert Dr. Kathleen Burch concerning primarily the deterioration of Petitioner's mental condition in the months leading up to and during his trial, the following exchange took place between the state trial court and Petitioner's postconviction counsel.

THE COURT: Thank you, Doctor [Burch].

MS. GREEN: Can we take five?

THE COURT: Who's next?

MS. GREEN: Dr. Mossman.

THE COURT: What is he going to add?

MS. GREEN: What he is going to add is his opinion that David Braden was not competent at the time of his trial, and that David Braden is being, at least to my knowledge as I sit here right now, treated with psychotropics and is no longer floridly psychotic. I have not talked – I want to put on the record I have not talked to my client extensively recently.

THE COURT: Why don't you do that during this break. And I don't know if I want to hear from Dr. Mossman or not at this point.

How long will he be?

MS. GREEN: He will be an hour.

THE COURT: I have had the pleasure in the past. And he had nothing to do with the trial of this case. And the witnesses that I have, one is relying on, has now changed her opinion from at the time of trial. I'm not sure what he can add, frankly.

Let's take a five-minute break.

— — —

Thereupon, a recess was taken.

THE COURT: I'm sorry. Ms. Green, do you have anyone further that you want to call?

Dr. Mossman, I don't know that I need to hear from him, frankly, at this point. I read his affidavit thoroughly.

Who else would you call?

MS. GREEN: That was it.

11

THE COURT: Okay. Does the State have anyone?

MS. ANDERSON: No, Your Honor.

THE COURT: I assume if Dr. Mossman testified, he would testify consistent with his affidavit he's already offered?

MS. GREEN: Yes.

MR. BODIKER: Angie has prepared a brief summary of what he would say. May we put that on the order (sic)?

THE COURT: Sure.

MS. GREEN: Dr. Mossman would testify to the factual predicate to the following: that David Braden suffers from depression with psychotic features; that David Braden is not malingering his symptoms; that he is being successfully treated with anti-psychotic medication; and that Dr. Mossman's professional opinion is David Braden did not have a rational, as well as a factual, understanding of the proceedings against him; and that David Braden did not have the ability to consult with his lawyer with a reasonable degree of rational understanding.

Thank you.

(Evid. Hrg. Tr., at 107-09.) Following some stipulations, the admission of exhibits, and the setting of a post-hearing brief schedule, the hearing concluded.

Here, there is obviously a conflict between the parties' positions as to the interpretation of the historical facts, and also how far any ruling by the trial court about Petitioner's additional witnesses actually extended. In light of the Court's conclusion, set forth below, that a hearing does not appear to be warranted, it is not necessary to resolve that conflict. Simply put, although it may or may not be the case that Petitioner has made a sufficient showing that the Court is able to afford him a hearing, the Court is not persuaded that it should.

The Court is not persuaded that an evidentiary hearing is necessary at this time because

12

the information that Petitioner seeks to present or develop is already a part of the record. In its March 30, 2007 *Opinion and Order*, the Court granted Petitioner leave to depose Dr. Mossman and Mr. Crates for the purpose of exploring certain issues that the affidavits of Dr. Mossman and Mr. Crates, or the state court record as it existed, might have left open. The Court stated that Dr. Mossman might offer testimony about what impact, if any, the fact that his initial evaluation of Petitioner took place nine months after Petitioner's trial would have on his conclusion that Petitioner had been incompetent to stand trial–an issue, apparently, that troubled the state trial court (Evid. Hrg. Tr., at 108). The Court is well aware that post hoc competency determinations are disfavored, *see, e.g., Pate v. Robinson*, 383 U.S. at 387 (emphasizing "the difficulty of retrospectively determining an accused's competence to stand trial"), and, as noted above, that was one of the reasons cited by the state trial court for not allowing Dr. Mossman to testify at the postconviction evidentiary hearing. The Court further stated in its order permitting discovery that a deposition of Dr. Mossman might also explain the differences between Dr. Mossman's primary diagnosis of major depression with psychotic features (App. Vol. IV, at 93-96) and Dr. Burch's primary diagnosis of paranoid schizophrenia (Trial Tr. Vol. XI, at 61), and whether those differences are material. The Court also stated that Dr. Mossman might be able to expand on a factor to which Dr. Burch was not able to testify–namely, the differences between Petitioner's mental condition before he began receiving an effective regimen of anti-psychotic medications and after (App. Vol. IV, at 86-93)–as evidence of the scope and effect of the delusions that Petitioner was experiencing prior to and during his trial.

The Court granted Petitioner leave to depose James Crates in the hopes that Mr. Crates might be able to offer additional, and perhaps more direct, evidence regarding Petitioner's mental

13

condition prior to and during his trial and whether, or to what extent, his mental condition impacted his ability to communicate with defense counsel and assist in his defense. The Court noted that it was clear from the record of Petitioner's state postconviction proceedings that Mr. Crates had had substantial contact with Petitioner prior to trial and that communications between lead counsel Tom Beal and defense psychologist Dr. Kathleen Burch often took place through Mr. Crates. The Court found good cause to believe that Mr. Crates could provide relevant and useful testimony on the essential element of Petitioner's claim that he was tried while incompetent and that Petitioner could not communicate or was not communicating with his defense counsel.

Petitioner filed the depositions of Dr. Mossman and Mr. Crates on March 24, 2008 (Doc. #'s 49-3 and 49-2). Pursuant to authority granted by Rule 7 of the Rules Governing Section 2254 Cases, the Court will expand the habeas corpus record to include those depositions. The Court is not persuaded at this time that more could be contributed by an evidentiary hearing. Thus, the Court is not persuaded that an evidentiary hearing is needed at this time. That is not to say, however, that the need for an evidentiary hearing might not emerge during the course of the habeas corpus proceeding. The Court may very well determine, during its review of the merits of Petitioner's claims, that a genuine factual dispute exists which cannot be resolved on the record before the Court or through further expansion of the record. In that event, the Court may reconsider its decision about whether an evidentiary hearing should be held, and may be required to revisit the issue about whether Petitioner has made the threshold showing needed to entitle him to a hearing if one appears advisable.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's motion for an evidentiary hearing (Doc. # 50) at this time, subject to reconsideration. Further, the Court **HEREBY EXPANDS** the record with the depositions of Dr. Douglas Mossman and Mr. James Crates (Doc. #'s 49-3 and 49-2).

Petitioner is **DIRECTED** to **FILE**, within forty-five (45) days of the date of this *Opinion and Order*, any brief addressing the merits of those claims that are not barred by procedural default, as well as any good faith, colorable cause and prejudice arguments that might exist to excuse the apparent defaults of grounds three and seven. Respondent will have thirty (30) days to file any response and Petitioner will have fifteen (15) days to file any reply to the response.

3-31-2019
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**